AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| JOSEPH CHARLES HENRICHSEN, aka | ) | Case No. |
| CHARLES PERRY, aka CHARLES PHILLIP | ) | |
| PERRY, aka JOSEPH CHARLES PHILLIP | ) | 2:26-mj-0106 SCR |
| HENRICHSEN, AND PHOENIX HENRICHSEN | ) | |
| | ) | |

*Defendants*

**FILED**

**Jul 17, 2026**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ July 16, 2026 _____ in the county of _____ Siskiyou _____ in the _____ Eastern _____ District of _____ California _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1201(a)(5) and 18 U.S.C. § 2 | Kidnapping a Federal Employee and Aiding and Abetting |
| 18 U.S.C. § 1201(a)(5) and 18 U.S.C. § 2 | Kidnapping a Federal Employee and Aiding and Abetting |

This criminal complaint is based on these facts:

(see attachment)

☒   Continued on the attached sheet.

/s/ Russell Quiniola
*Complainant's signature*

Russell Quiniola, FBI Special Agent
*Printed name and title*

Sworn to me and signed via telephone.

Date:   July 17, 2026

*Judge's signature*

City and state:   Sacramento, California

Sean C. Riordan, U.S. Magistrate Judge
*Printed name and title*

ERIC GRANT
United States Attorney
CHARLES CAMPBELL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br> v.<br><br>JOSEPH CHARLES HENRICHSEN, aka CHARLES PERRY, aka CHARLES PHILLIP PERRY, aka JOSEPH CHARLES PHILLIP HENRICHSEN, AND PHOENIX HENRICHSEN<br><br>    Defendants. | CASE NO.<br><br>**UNDER SEAL**<br><br>AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT |

I, Russell Quiniola, being first duly sworn, hereby depose and state as follows:

## I.  **INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since March of 2016. I am currently assigned to the Sacramento Division, Redding Resident Agency. While employed by the FBI, I have investigated federal criminal violations related to, among other things, violent crimes, domestic terrorism, and mass-casualty events. I have been the lead investigator on cases involving kidnapping, violent acts for the purpose of furthering political and religious ideology, and human trafficking. I have been the acting front-

1

line supervisor on the federal response to an elementary school shooting. I have interviewed several subjects and victims of kidnapping, human trafficking, and other violent crimes. I have attended trainings on the use of investigative methods such as the online forensic tools to search and identify perpetrators and victims of violent crimes such as kidnapping, human trafficking, and crimes against children. I have presented training courses on methods and procedures to coordinate resources for joint federal and state criminal investigations. I have gained experience through training at the FBI Academy as well as through my work related to conducting these types of investigations and others. Further, I am a federal law enforcement officer who is engaged in enforcing federal criminal laws, including 18 U.S.C. § 1201(a)(5) and I am authorized to request a federal search warrant.

2.    The facts and information set forth herein are based upon my personal knowledge and observations, observations of other law enforcement personnel, observations of cooperating individuals as related to me and other law enforcement personnel, my review of investigative reports, and discussions with other federal, state, and local law enforcement officials.  This affidavit is intended to show that there is sufficient probable cause for the requested complaint and arrest warrants and does not set forth all my knowledge about this matter.

## II.    PROBABLE CAUSE

3.    This affidavit is made to support a criminal complaint and arrest warrants charging Joseph Charles Henrichsen ("JOSEPH") and Phoenix Henrichsen ("PHOENIX") with two counts of Kidnapping a Federal Employee, in violation of 18 U.S.C. §§ 1201(a)(5), 2, on or about July 16, 2026, in the State and Eastern District of California.

### A.    JOSEPH Encounters and Kidnaps Victim 1 and Victim 2.

4.    On or about July 16, 2026, Victim 1 and Victim 2 (collectively, "the Victims") were both employed as staff biologists by the U.S. Forest Service (USFS).  The Victims were engaged in their official duties as staff biologists, specifically by conducting a USFS research study on frog habitats in Northern California.  The Victims were in the vicinity of Gumboot Lake Campground, which is located in a remote portion of Siskiyou County, in the State and Eastern

2

District of California.  On this date, the Victims were using a USFS vehicle, specifically, a 2023 Nissan Frontier ("the USFS Nissan").

5.    Also, on or about July 16, 2026, JOSEPH and PHOENIX were occupying a white Feather Ultra Lite by Jayco camping trailer, with Oregon license plate number R854166 ("the Trailer").[1]  The Trailer was parked on a road near Gumboot Lake Campground.  The Trailer is depicted below as it appeared after law enforcement arrested JOSEPH and PHOENIX:



6.    Based on statements given to law enforcement by the Victims after their release, JOSEPH approached the Victims near Gumboot Lake Campground on the morning of July 16. JOSEPH was carrying an AR-15-style assault rifle in his arms.  JOSEPH directed the Victims to turn around and put their hands up in the air.  When the Victims complied, JOSEPH used zipties to bind the Victims' wrists behind their backs.  Still visibly carrying the firearm, JOSEPH then ordered the Victims to walk to the Trailer.

7.    The Victims report that, as they approached the trailer, they saw an individual later identified as PHOENIX approach from off the road.  JOSEPH directed PHOENIX to clear

[1] Based on the available information, it appears that JOSEPH may be PHOENIX's father.

3

space inside the Trailer for the Victims to sit down.  PHOENIX appeared to obey the command, as indicated by PHOENIX walking inside the Trailer.  JOSEPH then directed both Victims to enter the Trailer and sit down.  Both Victims were still restrained by the zipties that JOSEPH had placed over their wrists.

**B.    JOSEPH Drives Victim 1 to Make Phone Calls.**

8.    At some point after the initial armed confrontation and binding of the Victims, JOSEPH removed Victim 1 from the Trailer and placed her inside the USFS Nissan.  Still carrying the rifle with him, JOSEPH then drove the USFS Nissan several miles towards Lake Siskiyou.  JOSEPH then used Victim 1's phone to place multiple phone calls.  One of these phone calls was to a USFS Forest Ranger.  JOSEPH also called an individual he knew, S.E.[2]

9.    JOSEPH left a voicemail for S.E.  In this voicemail, JOSEPH stated "I've taken two fed biologists hostage from the forest service. I'm driving in the ranger vehicle right now. Say hi to [Victim 1]."  The voice of Victim 1 can then briefly be heard.  JOSEPH continues that "[Victim 1] is ziptied, her hands are behind her fucking back, and I've got live rounds ready to fucking [inaudible] anyone who fucks with me.  So what I'd like to have happen, I'd like to have you send me a fucking fed investigator, with a goddamn badge, preferabl[y] from the FBI.  And we can talk things through a little bit."

10.    After a short period of time, Victim 1 reported that JOSEPH drove the USFS Nissan back to the Trailer and parked it a short distance away.  During the period when JOSEPH compelled Victim 1 to accompany him, PHOENIX was alone in the Trailer with Victim 2.  When JOSEPH and Victim 1 returned to the Trailer, JOSEPH directed Victim 1 to go inside the trailer with PHOENIX and Victim 2.  JOSEPH and PHOENIX kept Victim 1 and Victim 2 confined to the trailer until approximately noon.  JOSEPH maintained control over the rifle during this time.

11.    At approximately noon, JOSEPH exited the Trailer with Victim 2.  Victim 2 reported that JOSEPH directed her to enter the USFS Nissan along with him.  JOSEPH was

---

[2] S.E. is not affiliated with the FBI.

4

again carrying the AR-15-style rifle.  JOSEPH kept Victim 2 with him inside the USFS Nissan for approximately three hours.  During this time, PHOENIX was alone inside the Trailer with Victim 1.

**C.      Beginning of Standoff and Hostage Negotiations.**

12.      As the events unfolded July 16, multiple law enforcement agencies learned about the kidnapping and began preparing a coordinated response plan.  Members of the Federal Bureau of Investigations (FBI), the U.S. Forest Service (USFS), Homeland Security Investigations (HSI), the Siskiyou County Sheriff's Office (SCSO), and other federal, state, and local law enforcement agencies provided resources to enable a unified and effective response, which resulted in a rapid buildup of law enforcement in the area surrounding Gumboot Lake Campground and the Trailer.

13.      While JOSEPH was inside the USFS Nissan, he used the vehicle's radio to make contact with members of law enforcement who were gathering in the area.  Members of law enforcement ordered him to release the Victims and to surrender to law enforcement.  JOSEPH refused.  When members of law enforcement attempted to approach the Trailer, JOSEPH went back inside the Trailer with Victim 2.  JOSEPH again carried the rifle with him into the Trailer.

**D.      Prolonged Hostage Negotiations**

14.      Between the period when JOSEPH re-entered the Trailer with Victim 2 and approximately 1:00 a.m. on July 17, JOSEPH engaged in a prolonged and fractured series of discussions and negotiations with members of law enforcement, including members of the FBI's Hostage Response Team.  During these negotiations, agents repeatedly directed JOSEPH to allow the Victims to leave the Trailer.  JOSEPH refused to allow the Victims to leave and, instead, kept the Victims confined inside the Trailer.

15.      At approximately 8:20 p.m. on July 16 (during the negotiations), JOSEPH told a member of law enforcement that he had a grenade.  Based on my training and experience, I know that a "grenade" is a common term used to refer to a handheld explosive device used by the military.  JOSEPH threatened to use the grenade if members of law enforcement did not back

ORDER DELAYING NOTICE                                        5

away from the truck.

16.    At some point during the lengthy kidnapping and confining of the Victims on July 16 (carrying over to the morning of July 17), PHOENIX told JOSEPH that he saw people in the trees.  Based on the location of officers, it is likely that PHOENIX drew JOSEPH's attention to law enforcement officers who were in the vicinity of the Trailer.  Also during this period, JOSEPH made comments to law enforcement that he wanted FBI agents to make contact with a friend of his, who JOSEPH believed could help take care of PHOENIX.

**E.    Release of Hostages and End of the Standoff.**

17.    At approximately 1:00 a.m. on July 17, after prolonged discussions with members of FBI HRT and the SCSO SWAT Team, JOSEPH said he would release Victim 2.  A few minutes later, Victim 2 exited the Trailer and walked to meet members of law enforcement.  Approximately six minutes later, Victim 1 also exited the Trailer and walked to meet members of law enforcement.

18.    In brief interviews, both Victims confirmed that JOSEPH had kidnapped them at gunpoint.  Both Victims said they had been held in the Trailer against their will.  The Victims confirmed that PHOENIX stayed in the trailer with them during periods of the ordeal when JOSEPH left the Trailer but one or both Victims remained inside the Trailer.  According to one Victim, when JOSEPH was outside of the trailer, PHOENIX "kept watch" over the Victim.

19.    Negotiators continued speaking with JOSEPH in order to secure his peaceful surrender and that of PHOENIX.

20.    At approximately 2:30 a.m. on July 17, PHOENIX exited the Trailer and surrendered to law enforcement.  Agents took PHOENIX into custody.

21.    Approximately five minutes later, JOSEPH exited the Trailer and surrendered to law enforcement.  Agents took JOSEPH into custody.

**III.    CONCLUSION**

22.    Based on the foregoing, I submit there is probable cause to believe that, on or about July 16, 2026, JOSEPH Charles Henrichsen and PHOENIX Henrichsen committed

violations of multiple federal laws.  Specifically:

- Count One: on or about July 16, 2026, JOSEPH Charles Henrichsen seized, confined, kidnapped, abducted, and carried away Victim 1, in violation of 18 U.S.C. § 1201(a)(5) – Kidnapping of a Government Employee, and PHOENIX Henrichsen aided and abetted JOSEPH in the kidnapping of Victim 1, all in violation of 18 U.S.C. § 1201(a)(5) and 18 U.S.C. § 2(a).

- Count Two: on or about July 16, 2026, JOSEPH Charles Henrichsen seized, confined, kidnapped, abducted, and carried away Victim 2, in violation of 18 U.S.C. § 1201(a)(5) – Kidnapping of a Government Employee, and PHOENIX Henrichsen aided and abetted JOSEPH in the kidnapping of Victim 2, all in violation of 18 U.S.C. § 1201(a)(5) and 18 U.S.C. § 2(a).

//

Based upon the facts detailed above, I respectfully request that the Court issue a criminal complaint and arrest warrants for JOSEPH Charles Henrichsen and PHOENIX Henrichsen for the crimes detailed above.

Respectfully submitted,

/s/ Russell Quiniola
Russell Quiniola
Task Force Officer
Drug Enforcement Administration

Subscribed to and sworn to telephonically on:  July 17, 2026

Hon. Sean C. Riordan
U.S. MAGISTRATE JUDGE

7

*/s/ Charles Campbell*
Approved as to form by AUSA CHARLES CAMPBELL